*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOSEPH D. HUIT, | ) |
| | ) Supreme Court No. S-15514 |
| Petitioner, | ) |
| | ) Alaska Workers' Compensation |
| v. | ) Appeals Commission No. 13-016 |
| | ) |
| ASHWATER BURNS, INC., et al., | ) O P I N I O N |
| | ) |
| Respondents. | ) No. 7111 – June 17, 2016 |
| | ) |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Robert A. Rehbock and Andrew D. Wilson, Rehbock & Rehbock, Anchorage, for Petitioner. Robert L. Griffin and Aaron M. Sandone, Griffin & Smith, Anchorage, for Respondents. Laura Fox, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Stowers, Chief Justice, Fabe, Winfree, and Bolger, Justices. [Maassen, Justice, not participating.]

WINFREE, Justice.

# I.    INTRODUCTION

This appeal presents our first opportunity to consider whether *City & Borough of Juneau v. Thibodeau*,[1] holding that a superior court decision remanding a case to an administrative agency is not a final judgment for purposes of appeal to this court,[2] should apply to Alaska Workers' Compensation Appeals Commission decisions. We conclude that it should.

This appeal also presents our first opportunity to consider, at least in part, the legislature's 2005 amendments to the Alaska Workers' Compensation Act's presumption analysis. We reverse the Commission's application of that analysis in this case and modify its earlier precedent.

# II.    OVERVIEW OF THE RELEVANT LEGAL ISSUES BEFORE US

## A.    *City & Borough of Juneau v. Thibodeau*

Before the Commission's creation an Alaska Workers' Compensation Board decision could be appealed to the superior court, and a party dissatisfied with the superior court's final resolution of the case then could appeal to this court.[3] Construing the appellate rules, we decided in *Thibodeau* that "a decision of a superior court, acting as an intermediate appellate court, which reverses . . . the decision of an administrative agency and remands for further proceedings, is a non-final order of the superior court."[4]

---

[1]    595 P.2d 626 (Alaska 1979), *disavowed on other grounds by State v. Alex*, 646 P.2d 203, 208 n.4 (Alaska 1982).

[2]    *Id.* at 629.

[3]    *Cf. Municipality of Anchorage v. Anderson*, 37 P.3d 420, 420-21 (Alaska 2001) (dismissing appeal because superior court order was not final).

[4]    *Thibodeau*, 646 P.2d at 629.

In 2005 the legislature created the Commission,[5] a quasi-judicial agency in the executive branch[6] authorized to hear appeals from decisions of the Board,[7] and gave parties to a Commission decision the right to appeal a "final" decision to this court.[8] The legislature also authorized our review of other Commission orders "as provided by the Alaska Rules of Appellate Procedure."[9]

In the case before us the Commission decided that its decision was final as to some issues but not as to others and gave the parties notice that they could appeal to this court those parts of the decision that were "final" but needed to petition for discretionary review if they wanted review of the "non-final" portions of the order. The injured worker appealed a "final" part of the decision. We ordered the parties to provide supplemental briefing on the question of the finality of the Commission's decision and the applicability of the *Thibodeau* rule to the Commission's decision.

### B. Three-Step Presumption Analysis

In addition to creating the Commission the 2005 amendments to the Alaska Workers' Compensation Act changed the causation standard for compensable injuries.[10] At issue here is the effect of this change on the presumption analysis used to evaluate workers' compensation cases.

---

[5] Ch. 10, § 8, FSSLA 2005.

[6] *See Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 47 (Alaska 2007) (holding that the Commission is "a properly established quasi-judicial agency").

[7] AS 23.30.128(a).

[8] AS 23.30.129(a).

[9] *Id.*

[10] *See* ch. 10, § 9, FSSLA 2005.

### 1. Pre-2005 analysis

For work-related injuries before November 7, 2005,[11] application of the presumption of compensability consisted of three possible steps.[12] At the first step the employee was required to attach the presumption that the disability was work related by "establish[ing] a preliminary link between his disability and his employment."[13] To establish the link the employee was required to offer " 'some evidence' that the claim arose out of the worker's employment."[14] If the employee attached the presumption, the burden shifted to the employer to offer substantial evidence that either (1) provided an alternative explanation excluding work-related factors as a substantial cause of the disability, or (2) "directly eliminated any reasonable possibility that employment was a factor in causing the disability."[15] We called the two methods of rebutting the presumption "affirmative evidence" and "negative evidence."[16] An employer could rebut the presumption by presenting a qualified expert's testimony that the claimant's work

---

[11]     Ch. 10, FSSLA 2005 (demonstrating effective date of November 7, 2005 for addressing the presumption).

[12]     *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000) (citing *Osborne Constr. Co. v. Jordan*, 904 P.2d 386, 389 (Alaska 1995)).

[13]     *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 690 (Alaska 2000) (citing *Stephens v. ITT/Felec Servs.*, 915 P.2d 620, 624 (Alaska 1996)).

[14]     *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 610 (Alaska 1999) (quoting *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994)).

[15]     *Id.* at 611 (quoting *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1072 (Alaska 1997)).

[16]     *See Veco, Inc. v. Wolfer*, 693 P.2d 865, 872 (Alaska 1985).

was probably not a substantial cause of the disability.[17]  The first two stages of the analysis required the Board to consider the evidence in isolation without weighing it.[18]

If the employer presented enough evidence to rebut the presumption, the burden shifted back to the employee to prove the claim by a preponderance of the evidence.[19]  Only at the third stage could the Board weigh the evidence.[20]  The employee had to show by a preponderance of the evidence that work was a substantial factor in causing the disability:  to prevail, the employee had to show that "(1) 'but for' the employment the disability would not have occurred, and (2) reasonable persons would regard the employment as a cause and attach responsibility to it."[21]

---

[17]  *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 906 (Alaska 2003) (quoting *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992)).

[18]  *Tolbert*, 973 P.2d at 610 ("For purposes of determining whether the claimant has established the preliminary link, only evidence that tends to establish the link is considered — competing evidence is disregarded." (citing *Veco*, 693 P.2d at 869-70)); *Stephens*, 915 P.2d at 624 ("[W]e examine the evidence tending to rebut the presumption by itself in determining whether substantial evidence has been presented." (citing *Veco*, 693 P.2d at 869)).

[19]  *Tolbert*, 973 P.2d at 611 (citing *La. Pac. Corp. v. Koons*, 816 P.2d 1379, 1381 (Alaska 1991)).

[20]  *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 691 (Alaska 2000) (citing *Stephens*, 915 P.2d at 627).

[21]  *Williams*, 938 P.2d at 1072 (citing *Fairbanks N. Star Borough v. Rogers & Babler*, 747 P.2d 528, 532 (Alaska 1987)).

### 2.       The 2005 amendments

In 2005 the legislature repealed and reenacted AS 23.30.010,[22] modifying the standard for compensability of work-related injuries. The legislature also included in the reenacted statute a presumption analysis formulation. Alaska Statute 23.30.010(a) now provides:

> Except as provided in (b) of this section,[23] compensation or benefits are payable under this chapter for disability or death or the need for medical treatment of an employee if the disability or death of the employee or the employee's need for medical treatment arose out of and in the course of the employment.     To establish a presumption under AS 23.30.120(a)(1) that the disability or death or the need for medical treatment arose out of and in the course of the employment, the employee must establish a causal link between the employment and the disability or death or the need for medical treatment. A presumption may be rebutted by a demonstration of substantial evidence that the death or disability or the need for medical treatment did not arise out of and in the course of the employment. When determining whether or not the death or disability or need for medical treatment arose out of and in the course of the employment, the [B]oard must evaluate the relative contribution of different causes of the disability or death or the need for

---

[22]       Ch. 10, § 9, FSSLA 2005.  The repealed provision simply stated: "Compensation is payable under this chapter in respect of disability or death of an employee."  Former AS 23.30.010 (2004).

The legislature did not amend AS 23.30.120(a), the statutory subsection containing several presumptions related to workers' compensation, in 2005. *See* ch. 10, FSSLA 2005.  AS 23.30.120(a)(1) provides: "In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that . . . the claim comes within the provisions of this chapter . . . ."

[23]       AS 23.30.010(b) is about mental injury and is not an issue in this case.

medical treatment. Compensation or benefits under this chapter are payable for the disability or death or the need for medical treatment if, in relation to other causes, the employment is the substantial cause of the disability or death or need for medical treatment.

The legislature did not amend the definition of "arising out of and in the course of employment" in AS 23.30.395 in 2005.[24]

In *Runstrom v. Alaska Native Medical Center* the Commission construed the new statutory language as changing the presumption analysis only at the second and third stages.[25] The Commission previously had interpreted the phrase "the substantial cause" in AS 23.30.010(a) as meaning that a disability is compensable if, in comparison to other causes, work is the most important factor in bringing about the disability.[26] In considering how the statutory change affected the second stage, the Commission in *Runstrom* decided that the negative-evidence test from our prior cases — "directly eliminat[ing] any reasonable possibility that employment was *a factor* in causing the disability"[27] — was now "incompatible with the statutory standard for causation" because under the amended statute "employment must be more than *a factor* in terms of causation."[28] It also determined in *Runstrom* that an employer can rebut the presumption

---

[24]    *See* ch. 10, §§ 66-67, FSSLA 2005 (amending AS 23.30.395).

[25]    AWCAC Dec. No. 150 at 6 (Mar. 25, 2011).

[26]    *City of Seward v. Hansen*, AWCAC Dec. No. 146 at 12-14 (Jan. 21, 2011).

[27]    *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1072 (Alaska 1997) (emphasis added) (quoting *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1009) (Alaska 1994)).

[28]    *Runstrom*, AWCAC Dec. No. 150 at 7 (emphasis in original).

by showing "that a cause other than employment played a greater role in causing the disability . . . ."[29]

The Commission decided here that the employer had met its burden through expert opinions not identifying an alternative cause but nonetheless concluding that work was probably not the substantial cause of the employee's need for medical treatment. The parties dispute whether the employer rebutted the presumption and in so doing raise the question of the 2005 amendments' impact on the second stage of the presumption analysis both generally and as applied to this case.

## III.  FACTS AND PROCEEDINGS

Joseph Huit worked for Ashwater Burns, Inc. in 2010.  Early in November he was working on a remodel project, and as part of the job he removed a water-damaged vanity from a bathroom.  As he was carrying the vanity he scratched his abdomen on a protruding drywall screw; he showed the scratch to some people at the job site, including his brother Steven, but did not file a report of injury.

Late that night Huit left Alaska to visit his daughter and grandchildren in Florida.  Near the end of the visit his daughter noticed the scratch, which she thought was inflamed.  Huit flew back to Alaska, stopping for a long layover in Seattle where he met with his wife, who had been caring for her father in Oregon.  His wife also noticed the scratch and told him to watch it.  According to Huit at some point later in November the scratch appeared to heal.

On Friday December 3 Huit felt ill at work, so he went to the emergency room.  After testing Huit the doctor diagnosed a likely "viral syndrome" and told Huit to go home and rest but to return for a recheck if a fever still was present the following Monday.  Huit stayed home for about five days, but his symptoms did not improve —

---

[29]     *Id.*

they got worse. On December 9 he returned to the emergency room, where he was diagnosed with endocarditis;[30] he was hospitalized for several weeks while he received antibiotics to treat the infection. The emergency room physician wrote that Huit had "spontaneous endocarditis"[31] and commented that he "had no history of IV drug abuse." Upon admission another physician noted that there was "[n]o evidence of significant rash, erythema, breakdown, or bruising." An infectious-disease doctor was consulted as well; he observed that Huit's blood cultures were "growing Staphylococcus aureus," a type of bacteria, and reported "[m]etastatic lesions to the spleen, kidneys and brain" as well as "probable vegetation" on Huit's heart.

Studies of Huit's heart showed progressive damage. An echocardiogram in late December 2010 indicated "[m]oderate to severe aortic regurgitation," when two weeks earlier there had been only mild regurgitation and the valve opened well. By January 2011 Huit had severe aortic regurgitation, and in February he underwent aortic valve replacement surgery.

Huit first thought about the possibility that the infection was work related while he was hospitalized; he explained that after the doctors told him he had an infection, he remembered the scratch and notified his employer. Ashwater Burns filed a report of injury on December 21 and later controverted benefits, relying on a cardiologist's opinion formed after reviewing Huit's medical records. One of Huit's treating physicians, Dr. Robert Bundtzen, an infectious-disease specialist, noted on January 4, 2011 that an "abdominal abrasion" as described by Huit was "a possible portal

---

[30] "Endocarditis" is an inflammation of the innermost layer of heart tissue; bacterial endocarditis leads "to deformity and destruction of the valve leaflets of the heart." STEDMAN'S MEDICAL DICTIONARY 638,639 (28th ed. 2006).

[31] "Spontaneous" medically is defined as "[w]ithout apparent cause; said of disease processes or remissions." *Id.* at 1814.

of entry" for the staph bacteria. Huit filed a written workers' compensation claim for several benefits, including temporary total disability and medical costs, in early January 2011.

Ashwater Burns's employer's independent medical evaluation (EIME) consisted of records reviews by two physicians: a cardiologist and an infectious-disease specialist. Dr. Semler, the cardiologist, was skeptical that the scratch had happened or that it was the cause of the infection because "[a] screw does not cause Staph[]ylococcus infection. . . . [I]t has never been reported in medical literature that Staphylococcus grows on screws." He concluded: "The more likely medical explanation for the cause of the bacterial endocarditis is unknown, not related to the speculated 'scratch' injury if it occurred at all." Dr. Leggett, the infectious-disease specialist, did not think the scratch "was a more probable than not substantial cause of [Huit's] *S. aureus* aortic valve endocarditis." He acknowledged that with this type of infection "[t]he portal of entry may be rather insignificant, such as the alleged abrasion/scratch," but thought the infection was "just as likely to occur outside of work as at work." He observed that the source of the bacteria was Huit's "own skin," not the drywall screw. He also cited a study showing that "13% of *S. aureus* bacteremias[32] had no identifiable source" and concluded Huit fell into that category. Dr. Leggett wrote that it was unlikely "an infected local wound" would be visible three to four weeks later. He did not think the outcome would have been different if Huit had sought medical treatment when the scratch first became inflamed.

Because of the difference in medical opinions about causation, the Board ordered a second independent medical evaluation (SIME), consisting of two

---

[32] "Bacteremia" refers to the presence of live bacteria in the bloodstream. *Id.* at 195.

examinations several months apart, one by Dr. William Breall, a cardiologist, and the other by Dr. Francis Riedo, an infectious-disease specialist. Dr. Breall wrote that no evidence in the medical records "indicate[d] that the scratch on the abdomen caused a bacteremia"; to support this statement, he noted that the scratch "did not produce pus," the scratch "was not infected," and "no culture [was] obtained from [the] scratch at the time that it was red in appearance." Dr. Breall concluded there was "no hard evidence to indicate that Mr. Huit had an industrial accident" that caused the infection, but he agreed with Dr. Bundtzen that the abdominal scratch was "a 'possible' portal of entry."

Dr. Riedo also thought it was possible but not probable that the "scratch was the substantial cause of Mr. Huit's endocarditis." He thought it was "medically reasonable that a scratch as described" could cause endocarditis, but he also thought a scratch of that nature would still have been visible three to four weeks later. Dr. Riedo did not think Huit's work-related "injury or condition aggravate[d], combine[d] with or accelerate[d] any condition whose treatment or disability [was] not otherwise" work related. He concluded, "I do not believe that the purported scratch or infected scratch was the source of Mr. Huit's infection on a more probable than not basis."

Huit moved to Idaho and began treating with Dr. Dennis Stevens at the Boise Veterans Administration (VA) beginning in 2013.[33] Based on Huit's reports the VA medical staff thought the work-related scratch was the likely cause of Huit's endocarditis.

The Board held a hearing solely about the compensability of Huit's illness. Several lay witnesses testified, but no doctors did. The focus of the testimony was the witnesses' observations of Huit's abdominal scratch. At the conclusion of the hearing

---

[33] Huit began receiving VA benefits after he developed endocarditis, although he had been eligible for some time.

Huit argued that he had attached the presumption and his employer had not rebutted it because the doctors the employer relied on could not eliminate work as a causal factor in his need for medical treatment and subsequent disability. The employer argued it had rebutted the presumption through expert reports that concluded work was not the substantial cause of Huit's endocarditis. It also contended Huit had not reported the injury in a timely manner.

To resolve the compensability question, the Board first considered whether Huit had in fact scratched himself at work. The Board decided this was not a complex medical question, and it applied the three-step presumption analysis to this factual question.[34] It found that Huit had attached the presumption through his testimony and the testimony of his brother Steven. The Board determined that Ashwater Burns had rebutted the presumption with a chart note from the hospital "that '[t]here is no good portal of entry' " and with a medical opinion that the scratch would still have been visible on December 9, the date Huit was admitted to the hospital. The Board then weighed the evidence, giving the medical testimony less weight because doctors had given completely different opinions about whether a scratch like the one Huit described would still be visible when he went to the emergency room. The Board gave the lay testimony more weight; it found that Huit had suffered a scratch in the course and scope of his employment with Ashwater Burns.

The Board then turned to the endocarditis. The Board found Huit had attached the presumption the endocarditis was work related through Dr. Stevens's opinion that the scratch was "the only potential portal of entry for the infection." The Board interpreted prior Commission decisions as requiring Ashwater Burns to "present

---

[34]    *See Sokolowski v. Best W. Golden Lion Hotel*, 813 P.2d 286, 292 (Alaska 1991) (holding that worker was entitled to presumption of compensability on each evidentiary question related to whether injury arose in course and scope of employment).

substantial evidence that a cause other than the scratch played a greater role in causing the infection" to rebut the presumption. The Board examined different doctors' testimony. It first considered Dr. Semler's testimony; according to the Board, he "clearly doubted the scratch occurred" but identified the "more likely medical explanation for the cause of the bacterial endocarditis [was] unknown." The Board did not consider an unknown cause to be "substantial evidence that a cause other than employment played a greater role in causing the need for medical treatment." Both Dr. Breall, the SIME cardiologist, and Dr. Leggett, the employer's infectious-disease specialist, acknowledged that a scratch like Huit described could be a portal of entry for the bacteria, but neither doctor thought the scratch was more probably than not the substantial cause of the endocarditis. Both doctors said it was just as likely the bacteria had entered Huit's bloodstream through another scratch or skin lesion, but neither doctor pointed to any evidence that Huit had any such other problem. Again, the Board did not consider these doctors' opinions substantial evidence that a cause other than Huit's work "played a greater role in causing [his] need for medical treatment." Finally, the Board summarized Dr. Riedo's testimony. Dr. Riedo agreed with the other doctors that the scratch was a possible entry portal for the bacteria, but he thought the infection "was 'impossible to attribute to a single event.' " The Board did not consider this opinion substantial evidence that could rebut the presumption because "if it is impossible to attribute the infection to a single event, it cannot be attributed to a cause other than work."

The Board wrote that to rebut the presumption here, the employer needed to produce more evidence than opinions that more likely than not, the scratch was not the cause of the illness, because the doctors were unable to identify any other cause of the illness. The opinions all considered the cause to be unknown, even though they agreed the bacteria somehow had to have entered Huit's bloodstream. Because the Board did not consider any of the doctors' opinions sufficient to rebut the presumption, it decided

that Ashwater Burns had not met its burden at the second stage of the presumption analysis, making Huit's illness compensable.

The Board then engaged in an alternative analysis, in which it assumed the employer had rebutted the presumption. The Board gave the most weight to the opinions of Drs. Bundtzen and Stevens, Huit's treating physicians. After again noting that several doctors agreed the scratch was a possible entry point for the bacteria but doubted the existence of the scratch, the Board gave less weight to the opinions of Drs. Breall, Riedo, Leggett, and Semler because they "lacked important, credible evidence about the existence of the scratch." Based on the evidence and the weight assigned to it, the Board concluded that Huit had proved by a preponderance of the evidence that his work injury was the substantial cause of the endocarditis.

Ashwater Burns appealed to the Commission, which affirmed in part and reversed in part. The Commission agreed with the Board that Huit's claim was timely filed and that he had attached the presumption of compensability. The Commission disagreed with the Board's legal analysis related to rebutting the presumption, labeling the Board's interpretation of the Commission's decision in *Runstrom v. Alaska Native Medical Center*[35] "a narrow reading" that was nonetheless "understandable, given particular wording in that decision." The Commission faulted the Board for requiring the employer to produce substantial evidence that a cause other than employment was the substantial cause of Huit's endocarditis. The Commission decided that the presumption could be rebutted "through the presentation of substantial evidence that work was not the substantial cause of a disability." The Commission thought the evidence "ruled out what was identified as the one-and-only potential work-related cause

---

[35] AWCAC Dec. No. 150 at 7 (Mar. 25, 2011) (deciding that to rebut presumption of compensability, employer should show "that a cause other than employment played a greater role in causing the disability").

of Huit's disability, namely the scratch." It quoted Dr. Riedo's opinion that he did "not believe on a more probable than not basis that the November 5, 2010 scratch was the substantial cause" of the endocarditis. Dr. Riedo did not think it was probable because of "the lack of any skin lesion noted just three to four weeks after the scratch." The Commission also cited Dr. Breall's opinion that while it was possible that the scratch might have been the portal of entry, it was not probable. The Commission thought that these two opinions ruled out the scratch as the substantial cause of Huit's endocarditis, so it reversed the Board's determination that Ashwater Burns had not rebutted the presumption of compensability.

The Commission also found fault with the Board's alternative analysis. Specifically the Commission was "unable to identify an opinion from any of the medical experts . . . that the scratch was, to a reasonable degree of medical probability, the substantial cause of [Huit's] infection and endocarditis." The Commission thought there was "an insufficient connection between the evidence and the [B]oard's conclusion." It reversed the Board's alternative decision that Huit had proved his claim by a preponderance of the evidence, and it remanded the case to the Board for "sufficient findings, based on the record from the hearing . . . that would enable [the Commission] to effectively review" the Board's decision.

The Commission informed the parties that its decision was final as to its "affirmation of the [B]oard's decision in part, reversal of the [B]oard's decision in part, and vacating the [B]oard's decision in part." It also said the decision was "non-final" with respect to the "remand of the matter in part to the [B]oard." The Commission then notified the parties that the "final decision portion" of the decision became effective "when distributed" unless one of them filed a request for reconsideration or an appeal. The Commission advised the parties they could petition this court for review of the non-final part of the decision.

-15-

7111

Huit appealed the part of the Commission's decision about rebutting the presumption of compensability. The parties jointly asked the Board to decide whether it had jurisdiction "to consider the portion of the case remanded to the [B]oard" in light of the appeal to this court. The Board decided that it had no jurisdiction over any part of the case while an appeal was before this court.

## IV.    STANDARDS OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's.[36] "We apply our independent judgment to questions of law that do not involve agency expertise."[37] Interpretation of a statute is a question of law to which we apply our independent judgment, interpreting a statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[38] We do not mechanically apply the plain meaning rule but use a sliding scale approach to statutory interpretation, in which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[39] We review de novo the Commission's legal conclusion that substantial evidence supports the

---

[36]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014) (citing *Shehata v. Salvation Army*, 225 P.3d 1106, 1113 (Alaska 2010)).

[37]     *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 343 (Alaska 2011) (citing *Barrington v. Alaska Commc'ns Sys. Grp., Inc.*, 198 P.3d 1122, 1125 (Alaska 2008)).

[38]     *Louie v. BP Exploration (Alaska), Inc.*, 327 P.3d 204, 206 (Alaska 2014) (citing *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)).

[39]     *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005) (quoting *Muller v. BP Exploration (Alaska), Inc.*, 923 P.2d 783, 787-88 (Alaska 1996)).

Board's factual findings by "independently review[ing] the record and the Board's factual findings."[40]

## V.    DISCUSSION

### A.    The Commission Decision Was Not A Final Decision For Purposes Of An Appeal As A Matter Of Right.

The Commission called its decision as to three issues "final" and gave the parties notice that the "final" decision parts would take effect unless they appealed to this court. Huit appealed the Commission's decision that Ashwater Burns had rebutted the presumption of compensability. Under the rule in *City & Borough of Juneau v. Thibodeau* — a superior court decision remanding a case to an administrative agency is not a final judgment for purposes of appeal to this court[41] — the Commission's decision would not be a final decision because the Commission remanded the case to the Board for further factual findings.[42] We ordered the parties to provide supplemental briefing

---

[40]    *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

[41]    595 P.2d 626, 629 (Alaska 1979), *disavowed on other grounds by State v. Alex*, 646 P.2d 203, 208 n.4 (Alaska 1982).

[42]    As the Board correctly recognized, the remand required it to consider the same underlying issue raised in this appeal, namely the compensability of Huit's endocarditis. The Commission's decision in this case was thus not akin to a partial final judgment under Alaska Civil Rule 54(b), which permits a court to enter judgment "as to one or more but fewer than all of the claims or parties" when multiple claims are presented or multiple parties are involved. *Cf. Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 n.5 (Alaska 2014) (noting severability of attorney's fees dispute from other issues and comparing Commission decision there to partial final judgment). We have held that courts should sparingly apply Rule 54(b) to avoid piecemeal appeals, noting "the law's fundamental aversion" to those appeals. *Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1223 (Alaska 2009) (citing *Cole v. State Farm Ins. Co.*, 128 P.3d 171, 173 n.2 (Alaska 2006)). The law is averse to piecemeal appeals in the administrative context as well.

on *Thibodeau*'s applicability to Commission decisions; we also invited the State to participate as amicus curiae, which the State did.

Ashwater Burns and the State correctly observe that *Thibodeau* does not directly control when a Commission decision is final for purposes of appeal because *Thibodeau* concerned appeals from superior court orders[43] and the Commission is an administrative agency rather than a court.[44] Huit and Ashwater Burns both contend that policy and our prior cases favor extending the rule in *Thibodeau* to Commission decisions; they ask us to treat this case as a granted petition. The State sets out several alternatives for determining when a Commission decision is final for purposes of appeal, but it takes no position as to the best one because of the many roles it has in the workers' compensation process.

Our analysis begins with the statute's language; AS 23.30.129(a) provides in part: "Consistent with AS 22.05.010(b),[45] final decisions of the commission may be appealed to the supreme court, and other orders may be reviewed by the supreme court as provided by the Alaska Rules of Appellate Procedure." The legislature did not in this statutory subsection delineate what a "final decision of the commission" is, although it clearly envisioned a system in which some Commission decisions are final and others are not. Alaska Statute 23.30.128(e) requires the Commission to issue a written decision, with specific features, within 90 days of the completion of briefing or oral argument in an appeal from the Board; that written decision is called "the final commission decision."

---

[43]     595 P.2d at 629.

[44]     *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 47 (Alaska 2007).

[45]     AS 22.05.010(b) grants an appeal as a matter of right to this court "in those actions and proceedings from which there is no right of appeal" to either the court of appeals or the superior court.

One possible construction of the statute is to consider any decision having the characteristics set out in AS 23.30.128(e) a final decision for purposes of appeal. This construction would be in accordance with the presumption that the same word used twice in the same act has the same meaning,[46] and it would make the entire decision in this case appealable as a matter of right. But this construction is inconsistent with our precedent about the finality of administrative decisions for purposes of appeal to the superior court[47] and appears to be at odds with the Commission's normal practice when remanding the entire case to the Board.[48] Construing the two phrases as having the same meaning would also be contrary to the rule of statutory construction that terms used in statutes that have developed a specialized meaning through case law are presumed to have that specialized meaning[49] and the corollary that the legislature is aware of existing case law when it enacts or modifies the law.[50]

---

[46] *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 923 (Alaska 2013) (citing *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1133 (Alaska 1999)).

[47] *See, e.g.*, *Ostman v. State, Commercial Fisheries Entry Comm'n*, 678 P.2d 1323, 1327-28 (Alaska 1984) (holding that administrative decision is final when litigant has no more opportunity to submit evidence or otherwise modify decision through administrative process).

[48] *See, e.g.*, *City & Borough of Juneau v. Olsen*, AWCAC Dec. No. 184 at 20 (July 22, 2013); *Titan Enters. v. State, Div. of Workers' Comp.*, AWCAC Dec. No. 175 at 22 (Jan. 8, 2013).

[49] *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 281 (Alaska 2015) (citing *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 633 n.33 (Alaska 2011)).

[50] *See Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006) (stating presumption that legislature is aware of common law when enacting statutes); *see also Joseph v. State*, 293 P.3d 488, 492 (Alaska App. 2012) ("[T]he legislature is presumed
(continued...)

We have held that the test for finality for purposes of judicial review of administrative decisions "is essentially a practical one"[51] that considers "whether the agency has completed its decisionmaking process[] and whether the result of that process is one that will directly affect the parties."[52] We have instructed that in deciding whether an agency decision is final for judicial review, the superior court should "focus primarily on the operational or 'decretal' language" in the decision.[53] The inquiry should also consider whether the litigants still have an opportunity "to submit evidence or alter the decision through administrative means."[54] Because the Commission is a quasi-judicial agency, we assume the legislature was aware of cases defining an agency decision's finality for purposes of judicial review when it enacted AS 23.30.129[55] and intended a "final" decision in that section to have the same meaning.

---

[50]    (...continued)
to be aware of pertinent court decisions when it amends a statute."  (citing *Shea*, 267 P.3d at 633 n.33)).

[51]    *Crawford & Co. v. Baker-Withrow*, 81 P.3d 982, 985 (Alaska 2003) (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 184 (Alaska 1980)).

[52]    *Id.* (quoting *State, Dep't of Fish & Game, Sport Fish Div. v. Meyer*, 906 P.2d 1365, 1370 (Alaska 1995), *superseded by statute on other grounds*, AS 18.80.112(b)).

[53]    *Ostman v. State, Commercial Fisheries Entry Comm'n*, 678 P.2d 1323, 1327 (Alaska 1984) (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030-31 (Alaska 1972), *overruled on other grounds by City & Borough of Juneau v. Thibodeau*, 529 P.2d 626, 628-30 (Alaska 1979)).

[54]    *Allen v. State, Dep't of Revenue, Child Support Enf't Div.*, 15 P.3d 743, 747 (Alaska 2000) (quoting *Meyer*, 906 P.2d at 1371).

[55]    *See Young*, 143 P.3d at 945.

Two agencies are involved in the administrative process of a workers' compensation decision rather than one, but they are integrally related, with Commission decisions serving as legal precedent for both agencies.[56] And while the Commission may complete its decision-making process in cases like this one, when it remands the case to the Board without retaining jurisdiction,[57] the entire administrative decision-making process is not complete if the remand permits further Board action that could change the case's outcome. On remand the parties here would have had the opportunity to alter the decision through administrative means, either through argument or presentation of additional evidence if the Board considered that necessary. As the Board recognized, the remand considered essentially the same underlying issue that this appeal does. The decretal language here contemplated further administrative proceedings by remanding so the Board could make further findings. Thus under our precedent the case was not a final administrative decision for purposes of judicial review.

Construing "final decision of the commission" in AS 23.30.129(a) as equivalent to a "final commission decision" in AS 23.30.128(e) would permit appeals as a matter of right in cases that do not meet our precedents' finality test and have not in the past been labeled "final" by the Commission. A case remanded on all issues to the Board is not "final" for purposes of judicial review because on remand the parties might present evidence and make arguments that could change the decision. The Commission

---

[56]     *See Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 45 (Alaska 2007) (construing statutory provision that Commission decisions have force of legal precedent unless reversed by this court).

[57]     The Commission may retain jurisdiction when it remands a case to the Board. AS 23.30.128(d). No one questioned the Commission's decision not to retain jurisdiction in this case.

-21-                                                            **7111**

has not treated such cases as "final,"[58] yet they meet the criteria of AS 23.30.128(e) as long as they are in writing and contain the features set out in that subsection.

Conversely, construing these phrases in the same manner could exclude decisions that meet our precedents' finality test. Alaska Statute 23.30.128(e) ties finality to the Commission's resolution of the merits appeal; a "final commission decision" is one the Commission issues after "briefing on the appeal is completed or oral argument is held." But the Commission awards attorney's fees under AS 23.30.008(d) as part of the merits appeal, not as a separate case,[59] so a decision about attorney's fees might never be "final" as the term is used in subsection .128(e).[60] The Commission has not been consistent in giving notice of appeal rights in its decisions about fees. In one case it labeled a fee order "final" and gave the parties notice of their right to appeal;[61] in another case, it called its decision a "memorandum" decision and gave no notice to the parties about finality or any appeal rights, even through discretionary review.[62] We conclude

---

[58] *See, e.g.*, *City & Borough of Juneau v. Olsen*, AWCAC Dec. No. 184 at 20 (July 22, 2013); *Titan Enters. v. State, Div. of Workers' Comp.*, AWCAC Dec. No. 175 at 22 (Jan. 8, 2013).

[59] *See, e.g.*, *Shehata v. Salvation Army*, AWCAC Dec. No. 075 (Mar. 19, 2008) (attorney's fees decision in AWCAC Appeal No. 07-021); *Shehata v. Salvation Army*, AWCAC Dec. No. 063 (Dec. 20, 2007) (merits decision in AWCAC Appeal No. 07-021).

[60] The Commission at times has treated its attorney's fees decisions as nonfinal. *See Adamson v. Municipality of Anchorage*, AWCAC Appeal No. 11-017, *Order on Motion for Reconsideration* (AWCAC Order, Nov. 19, 2014) (denying reconsideration of attorney's fees decision because it was not a final decision but a memorandum decision), filed in *Adamson v. Municipality of Anchorage*, S-15753.

[61] *See Shehata*, AWCAC Dec. No. 075 at 11-12.

[62] *See Adamson v. Municipality of Anchorage*, AWCAC Dec. No. 203 at 5
(continued...)

-22- **7111**

that the terms used in AS 23.30.128(e) and AS 23.30.129(a) are not equivalent. Finality for the Commission's purposes can be distinct from finality for purposes of judicial review; as the judicial body reviewing the Commission's administrative decisions, we will decide whether a Commission decision is final for purposes of judicial review by applying prior case law.

Our construction of the statute is consistent with the limited legislative history concerning the Commission. As we have observed previously, the legislature's goals in creating the Commission were to make the workers' compensation administrative process more expeditious and consistent.[63] Applying the rule in *Thibodeau* to Commission decisions furthers these goals by permitting discretionary review by this court when a case presents an important legal question but allowing the administrative process to come to completion prior to an appeal as a matter of right. We also have noted that the legislature wanted litigants appealing to the Commission to retain "the same procedural rights of review that they had in the superior court."[64] The rule in *Thibodeau* provides parties in the workers' compensation system the same process that existed prior to 2005; it also provides, as the State puts it, "an attractive symmetry," making the process more consistent with that of other agency appeals and thus easier for unrepresented parties to follow. Applying *Thibodeau* also limits piecemeal appeals[65] and permits complete development of the agency record before

---

[62]    (...continued)
(Nov. 12, 2014).

[63]    *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 39 (Alaska 2007).

[64]    *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 347 (Alaska 2011).

[65]    *See Neese v. Lithia Chrysler Jeep of Anchorage, Inc.*, 210 P.3d 1213, 1223 (Alaska 2009) (discussing policy against piecemeal review of cases).

judicial review.[66] *Thibodeau* allows a party to preserve legal issues decided throughout the case for review by this court after completion of the administrative process.[67]

We are mindful that Commission decisions have the force of legal precedent for both the Board and the Commission unless reversed by this court;[68] the State pointed to this feature of the statutory scheme as one policy consideration weighing against application of *Thibodeau* to Commission decisions. Parties to an appeal like this one, involving an important question of law and its application to the case, can petition for review of a Commission decision if they are concerned about the Commission's legal analysis.[69] And the legislature both provided a mechanism for the director of the Division of Workers' Compensation to appeal in Commission proceedings and permitted the Division's director to appeal a compensation order to the Commission when a party in interest is not represented and the order "concerns an unsettled question of law."[70] These procedures should adequately protect against the risk that a legally erroneous Commission decision would taint numerous cases.

In light of the Commission's notice to the parties here about their appeal rights, Huit understandably appealed the Commission's decision that Ashwater Burns rebutted the presumption. Under the rule we adopt today, he did not have an appeal as of right. But because this case involves an important question of law and immediate

---

[66] *Cf. Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 n.7 (Alaska 1974) (adopting rule that judicial review is limited to agency record).

[67] 595 P.2d 626, 631 (Alaska 1979).

[68] AS 23.30.008(a); *Alaska Pub. Interest Research Grp.*, 167 P.3d at 45.

[69] AS 23.30.129(a); Alaska R. App. P. 402; *Thibodeau*, 595 P.2d at 631.

[70] AS 23.30.127(a).

review will materially advance the termination of the litigation,[71] we follow our precedent to treat the appeal as a petition for review[72] and grant it.

**B.      The Commission Erred In Deciding That Ashwater Burns Rebutted The Presumption Of Compensability.**

The Commission reversed the Board's decision at the second stage of the presumption analysis and decided that Ashwater Burns had rebutted the presumption of compensability.      The Commission thought the Board's interpretation of the Commission's prior decisions was unduly "narrow" and wrote that "the presumption can be rebutted through the presentation of substantial evidence that work was not the substantial cause of a disability." The Commission explained that the question the Board needed to consider was "whether the medical evidence in this case ruled out employment as the substantial cause of Huit's infection and endocarditis." Focusing on statements in the SIME physicians' reports, the Commission decided Ashwater Burns had provided substantial evidence to rebut the presumption. The Commission relied on Dr. Breall's opinion that he could not say "there was 'a reasonable medical degree of probability' that the scratch" caused Huit's infection, even though Dr. Breall acknowledged it was possible the scratch could have been where the staph bacteria entered Huit's bloodstream. It also quoted Dr. Riedo's opinion that "[w]hile it is medically reasonable that a scratch as described by Mr. Huit can cause this illness, it is possible but again not probable" because no skin lesions had been documented three to four weeks after the scratch.

Huit argues that the presumption analysis as applied to his injury should be no different from the presumption analysis before the 2005 statutory changes, set out in

---

[71]      *See* Alaska R. App. P. 402(b)(2).

[72]      *See, e.g.*, *Thoeni v. Consumer Elec. Serv.*, 151 P.3d 1249, 1253-54 (Alaska 2007).

Section II.B.1, because the legislative changes were meant to apply to claims where a work injury aggravated a preexisting condition or injury and he had none. He maintains that because there is no cause with which to compare the work-related scratch, Ashwater Burns did not rebut the presumption because it could not rule work out as his infection's cause; in fact, the doctors all agreed the scratch was a possible entry point for the bacteria that caused the infection.

Ashwater Burns contends the Commission correctly decided that medical opinions in the record rebutted the presumption and that to decide otherwise would create an irrebuttable presumption. It asserts that because the statute now unambiguously provides that compensation is payable only when, in relation to other causes, employment is "the substantial cause"[73] of a disability or need for medical treatment, at the second stage it only needed to provide an expert opinion that the scratch was not the substantial cause of the infection.

As stated previously, we have yet to construe the 2005 amendments to the Alaska Workers' Compensation Act as they relate to the presumption analysis. The only part of the presumption analysis at issue in this appeal is the second stage: Ashwater Burns does not contest that Huit attached the presumption, and Huit did not ask us to review the Commission's decision about the third stage.

Under the pre-2005 analysis the employer could rebut the presumption of work-relatedness by presenting substantial evidence that either (1) provided an alternative explanation that would exclude work-related factors as a substantial cause of the disability, or (2) directly eliminated any reasonable possibility that employment was

---

[73]     AS 23.30.010(a).

a factor in causing the disability.[74]  An employer could rebut the presumption by presenting a qualified expert's opinion testimony that the claimant's work was probably not a substantial cause of the disability.[75]  That opinion had to be supported by substantial evidence.[76]

With respect to the second stage, AS 23.30.010(a) now provides that the "presumption may be rebutted by a demonstration of substantial evidence that the death or disability or the need for medical treatment did not arise out of and in the course of the employment."[77]  It then instructs:  "When determining whether or not the death or disability or need for medical treatment arose out of and in the course of the employment, the [B]oard must evaluate the relative contribution of different causes of the disability or death or the need for medical treatment."

We begin our analysis by examining the statutory language.  The statutory language does not require the Board to determine or even consider "the substantial cause" at the second stage of the presumption analysis, but it does require the Board to "evaluate the relative contribution of different causes" in deciding whether the disability arose out of and in the course of employment.  Here no other cause was identified as contributing to Huit's infection, so the Board did not need to evaluate the relative

---

[74]     *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 611 (Alaska 1999) (quoting *Williams v. State, Dep't of Revenue*, 938 P.2d 1065, 1072 (Alaska 1997)).

[75]     *Bradbury v. Chugach Elec. Ass'n*, 71 P.3d 901, 906 (Alaska 2003) (citing *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992)).

[76]     *Safeway, Inc. v. Mackey*, 965 P.2d 22, 27-28 (Alaska 1998).

[77]     AS 23.30.395(2) defines "arising out of and in the course of employment" as including "activities performed at the direction or under the control of the employer."  No one disputes that Huit was engaged in work-related activities when he scratched himself on the vanity, so this work-relationship aspect is not at issue.

contribution of different causes to the infection. The Board nonetheless was required to consider whether Ashwater Burns had provided "a demonstration of substantial evidence that the . . . disability or the need for medical treatment did not arise out of and in the course of the employment."[78]

Ashwater Burns maintains that it did so through medical opinions that, on a more probable than not basis, the scratch was not the substantial cause of the disability. But the statute does not instruct the Board to make the determination of "the substantial cause" at the rebuttal stage. And at no point does the statute explicitly equate "aris[ing] out of and in the course of employment" with "the substantial cause."[79] While both phrases are prerequisites for receiving workers' compensation,[80] they could be two independent conditions rather than one, equivalent condition. We thus disagree with Ashwater Burns's contention that the statutory language in this regard is not ambiguous. To resolve the ambiguity, we examine the legislative history to consider the degree to which the legislature intended to modify the presumption analysis developed under the prior causation standard.

As Ashwater Burns points out, "the substantial cause" as a standard for awarding compensation originated with the legislature's desire to limit aggravation claims. One principal reason the governor cited for proposing the 2005 Alaska Workers' Compensation Act amendments was "increasing costs of maintaining the current

---

[78] AS 23.30.010(a).

[79] *Id.*

[80] The first sentence of AS 23.30.010(a) establishes that "compensation or benefits are payable under this chapter for disability . . . if the disability . . . arose out of and in the course of the employment," and the last provides that "[c]ompensation or benefits under this chapter are payable for the disability . . . if, in relation to other causes, the employment is the substantial cause of the disability . . . ."

system."[81] The legislature considered limiting the compensability of aggravation claims as a means of reducing insurance costs.[82] The Senate Judiciary Committee proposed added language that would have narrowed the definition of "injury" to exclude from coverage an "aggravation, acceleration or combination with a preexisting condition unless the employment [was] the major contributing cause of disability or need for medical treatment."[83] According to Paul Lisankie, then the Director of the Division of Workers' Compensation, "the major contributing cause" would be the predominant cause of the disability, or at least a 51% cause.[84] He indicated that "the major contributing cause" standard was meant to establish a "higher standard" for compensability than the current law and that it was derived from Oregon law.[85]

The House Labor and Commerce Committee removed this definition of "injury,"[86] but the change in defining "injury" was reinserted in the bill's first conference

---

[81] 2005 Senate Journal 465.

[82] *See* Minutes, Sen. Judiciary Comm. Hearing on S.B. 130, 24th Leg., 1st Sess. 10:38-10:42 (Apr. 7, 2005) (testimony of Paul Lisankie, Director, Div. of Workers' Comp.) (testifying that the "impetus" of the amendment excluding some aggravation claims was "decreasing the cost of insurance premiums").

[83] *Id.* (amendment proposed by Chair Seekins and moved by Senator Huggins).

[84] Testimony of Paul Lisankie, Director, Div. of Workers' Comp. at 10:37-10:42, Hearing on S.B. 130 Before the Sen. Judiciary Comm., 24th Leg., 1st Sess. (Apr. 7, 2005).

[85] *Id.* at 10:41:08-10:41:17.

[86] H.C.S. C.S.S.B. 130 (L&C), 24th Leg., 1st Sess. (May 5, 2005).

committee version.[87] The House did not adopt the conference committee version of the bill.[88] In the Free Conference Committee, Senator Gene Therriault proposed an amendment specifically providing that compensation was not payable for aggravation claims unless employment was "the major contributing cause" of the disability; that amendment failed.[89]

Senator Therriault then proposed an amendment that established the language of AS 23.30.010.[90] Senator Therriault indicated the amendment's language was developed with Assistant Attorney General Kristin Knudsen, who spoke to the committee about the bill.[91] Knudsen testified that the language about the operation of the presumption was derived from prior cases and was not intended to change the way the presumption analysis operated.[92] She identified both tests in prior case law for overcoming the presumption,[93] and she indicated, in response to Senator Hollis French,

[87] C.C.S. S.B. 130, 24th Leg., 1st Sess. (May 13, 2005).

[88] 2005 House Journal 2042-44.

[89] Minutes, H. Free Conference Comm. Hearing on S.B. 130, 24th Leg., 1st Spec. Sess. 5:40-5:42, 9:12-9:28 (May 20, 2005).

[90] Minutes, H. Free Conference Comm. Hearing on S.B. 130, 24th Leg., 1st Spec. Sess. 1:18-1:19 (May 21, 2005) (statement of Sen. Gene Therriault).

[91] Statement of Sen. Gene Therriault at 1:19:20-1:20, Hearing on S.B. 130 Before the H. Free Conference Comm., 24th Leg., 1st Spec. Sess. (May 21, 2005).

[92] Testimony of Kristin Knudsen, Assistant Att'y Gen. at 1:25-1:26, 1:38-1:39, Hearing on S.B. 130 Before the H. Free Conference Comm., 24th Leg., 1st Spec. Sess. (May 21, 2005).

[93] Minutes, H. Free Conference Comm. Hearing on S.B. 130, 24th Leg., 1st Spec. Sess. 1:35-1:39 (May 21, 2005) (testimony of Kristin Knudsen, Assistant Att'y Gen.) (stating that the employer's burden is "unchanged" and the employer "must
(continued...)

that the language up through the last line — in other words, the language about application of the presumption analysis — was "not intended in any way to restrict or change the current standard for work relationship."[94] Knudsen and Senator Therriault both told committee members that the language about attaching and rebutting the presumption was derived from our case law,[95] and comments of some committee members indicate they understood the amendment as codifying the standards for attaching and rebutting the presumption.[96] The legislative history thus suggests application of the presumption analysis was to remain intact; there is no indication the legislature intended to change the manner in which an employer rebutted the presumption.

Based on the legislative history we conclude that the Commission's interpretation of the statute as abrogating the negative-evidence test from prior case law was erroneous,[97] and we overrule that part of the Commission's *Runstrom* decision.[98] We agree with the Commission's earlier observation that an opinion establishing that a

---

[93]     (...continued)
eliminate the possibility of a work relationship or must point to the way [sic] to overcome the presumption").

[94]     *Id.* at 1:44-1:46.

[95]     *Id.* at 1:35-1:42.

[96]     *Id.* at 1:35-1:50 (statements of Sen. Gene Therriault, Sen. Hollis French, and Rep. Eric Croft, and testimony of Kristen Knudson, Assistant Att'y Gen.).

[97]     *See supra* text accompanying notes 15-16.

[98]     We affirmed the Commission's decision in *Runstrom* because the result in that case was the same no matter how the statute was interpreted. *Runstrom v. Alaska Native Med. Ctr.*, 280 P.3d 567, 573 (Alaska 2012). We nonetheless made clear that we considered the interpretation of AS 23.30.010(a) an "open question." *Id.* at 573 n.16.

cause is not *a* substantial factor of the disability rebuts the presumption using either "a substantial factor" or "the substantial cause" as a standard because something cannot be "the substantial cause" of a disability if it is not a cause at all.[99] We observe that elimination of the negative-evidence test arguably made it harder for an employer to rebut the presumption in those cases of medical uncertainty in which the underlying condition is poorly understood.[100]

We next consider whether Ashwater Burns's evidence met either the affirmative-evidence test or the negative-evidence test. Because there was no competing cause in this case, we do not consider how the presumption analysis should be applied when another possible cause, such as a prior injury, contributed to the disability. We agree with Huit that when there is no competing cause, the standard for rebutting the presumption is essentially unchanged from prior cases: the requirement in subsection .010(a) that the Board "evaluate the relative contribution of different causes" when assessing work-relatedness presupposes the identification of more than one cause.

Under the amended statute, rebutting the presumption required Ashwater Burns to show that Huit's infection did not arise out of his employment. On the facts of this case, to do this, Ashwater Burns needed to show that the work-related scratch could not have caused the infection (the negative-evidence test) or another source of the bacteria caused the infection (the affirmative-evidence test). It argues that because experts gave the opinion that work was probably not the substantial cause of the

---

[99] *State, Dep't of Corr. v. Dennis*, AWCAC Dec. No. 036 at 10 n.26 (Mar. 27, 2007).

[100] *See Safeway, Inc. v. Mackey*, 965 P.2d 22, 28 (Alaska 1998) (affirming Board decision that employer rebutted the presumption when employer's expert refuted the employee's theory of causation by testifying that no relationship had been established between the alleged injury mechanism and the employee's medical condition).

disability it provided this evidence.  But, as we said in *Safeway, Inc. v. Mackey*, "merely reciting the proper words as an opinion is not necessarily enough to rebut the presumption of compensability, because the employer must provide *substantial evidence* that the disability was not work-related."[101]

Considering first the negative-evidence test, we conclude that the doctors' opinions do not meet this test; they do not show that the work-related scratch could not have been the entry point for the bacteria that caused the infection.  In fact the experts indicated that bacteria can enter the bloodstream through minor scratches like one Huit described, and Ashwater Burns conceded at oral argument before us that the scratch was a possible entry point for the bacteria.[102]  Moreover the Commission cited the opinions of Drs. Breall and Riedo to support its determination that Huit attached the presumption.

The doctors' opinions here are distinct from the negative evidence offered to rebut the presumption in *Norcon, Inc. v. Alaska Workers' Compensation Board*[103] and *Safeway, Inc. v. Mackey*,[104] two cases on which Ashwater Burns relies.  In both *Norcon* and *Mackey*, the employee established a causal connection, but it was eliminated by expert-opinion testimony that no relationship existed between the alleged cause and the disability.  In *Norcon*, where long hours and their resulting stress allegedly caused a worker's ventricular fibrillation and resulting death, a doctor rebutted the alleged causal connection by testifying that working long hours "is not recognized to be a risk factor

---

[101]    *Id.* at 27-28 (emphasis in original) (citing *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992)).

[102]    Ashwater Burns also agreed that the bacteria's being present on Huit's skin, as opposed to being present on the drywall screw, was irrelevant for purposes of determining work-relatedness.

[103]    880 P.2d 1051 (Alaska 1994).

[104]    965 P.2d 22 (Alaska 1998).

for sudden cardiac death" and that there was no reasonable possibility "that the two are related."[105] And in *Mackey*, where the worker alleged that her fibromyalgia developed from earlier work-related injuries and repetitive stress, we recognized that the employer's doctor "testified that trauma and the development of fibromyalgia have not been reliably related" and "rebutted the theories that [the claimant's doctor] presented to link [the claimant's] work with her fibromyalgia."[106] In contrast the experts here indicated that a scratch like the one Huit described *could* be an entry point. Because they did not rebut the causation theory Huit's doctors presented, their opinions did not meet the negative-evidence test for rebutting the presumption.

For the doctors' opinions in this case to meet the affirmative-evidence standard, they needed to provide substantial evidence ruling out the work-related scratch as the source of the staph bacteria that caused Huit's endocarditis by identifying another explanation for the bacteria's presence in Huit's bloodstream.[107] The Board carefully considered each doctor's opinion; we agree with the Board that none of the doctors provided substantial evidence of another cause.

"The mere possibility of another injury is not 'substantial' evidence sufficient to overcome the presumption."[108] As the Board noted, Dr. Semler, the EIME cardiologist who based his opinion "on the lack of evidence to support the alleged scratch," said the "more likely medical explanation for the cause of the bacterial endocarditis is unknown." We agree with the Board that an "unknown" cause is not substantial evidence to rebut the presumption. The other EIME physician, Dr. Leggett,

---

[105] *Norcon*, 880 P.3d at 1054.

[106] *Mackey*, 965 P.2d at 28.

[107] *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 611 (Alaska 1999).

[108] *Hoth v. Valley Constr.*, 671 P.2d 871, 874 (Alaska 1983) (per curiam).

-34-                                        7111

gave the opinion that "an unidentified source" was the substantial cause of Huit's endocarditis, even though he acknowledged that "[t]he portal of entry may be rather insignificant, such as the alleged abrasion/scratch." Dr. Leggett listed other conditions that might provide entry points for the bacteria, but as the Board observed, "he did not identify [Huit] as having any of those conditions." His opinion, like that of Dr. Semler, was not substantial evidence rebutting the presumption.

The SIME physicians' opinions were similar. While both agreed that the scratch could be an entry point for the bacteria, they refused to identify it as the substantial cause of the infection, evidently because they lacked information about or doubted the existence of the scratch. And like Drs. Semler and Leggett, Drs. Breall and Riedo were unable to identify another entry point. Dr. Breall observed that "staph aureus is ubiquitous" and can enter the bloodstream "in a susceptible individual from just about any place." He did not explain what would make an individual "susceptible," and, absent anything identifying Huit as particularly susceptible, this explanation does not rule out the work-related scratch as the cause of the staph infection. Dr. Riedo also accepted that the scratch Huit described could lead to endocarditis, but he thought the endocarditis was "impossible to attribute to a single event." He did not, however, point to other events that contributed to it.

The evidence the Commission cited was not substantial. The opinions offered alternative theories of causation, but "the mere possibility" of a non-work-related alternative is not sufficient to rebut the presumption.[109] There was no direct evidence to support the existence of another scratch or any other possible portal for the bacteria, and,

---

[109]    *See Excursion Inlet Packing Co. v. Ugale*, 92 P.3d 413, 419 (Alaska 2004) (per curiam) (holding that employer did not rebut presumption because "there [was] no direct evidence of [the alternative explanation] and it [was] inconsistent with" some established facts).

as the Board observed, the EIME and SIME doctors did not have access to "the credible lay testimony" about the existence of the scratch.[110] We thus conclude the Commission erred in deciding that Ashwater Burns rebutted the presumption of compensability.

###     C.     There Is No Irrebuttable Presumption Here.

Ashwater Burns maintains that Huit seeks to create an irrebuttable presumption and that we have previously decided in cases of medical uncertainty that a doctor's opinion that the disability was not work related is adequate to rebut the presumption. It argues that several doctors' opinions met that standard, making the Commission's decision correct. Huit denies seeking to create an irrebuttable presumption, pointing out facts that might have rebutted the presumption, such as evidence that he actually had "a similar injury away from work."

We agree with Huit that the difficulty Ashwater Burns faces is not a legal hurdle, but a factual one. The uncertainty in Huit's case revolved around where the bacteria entered his bloodstream. The experts all agreed that staph caused his bacterial infection, which in turn led to his need for medical treatment. They also indicated even minor scratches can serve as entry points for bacteria. The uncertain causation in the case was related to the existence of the scratch, as is evident from the experts' reports; the doctors expressed uncertainty about the existence of the scratch, not about whether bacteria could enter the bloodstream through a scratch. The Board separately analyzed the fact question related to the scratch and found that Huit had in fact been scratched at work as he alleged. Ashwater Burns did not question the Board's proceeding in this

---

[110]     *Cf. Beauchamp v. Emp'rs Liab. Assurance Corp.*, 477 P.2d 993, 996 (Alaska 1970) (holding that "[c]ausation is not a matter lying exclusively within the field of medical science" particularly when expert "lacked knowledge of relevant evidence known to the Board").

manner and did not appeal the Board's resolution of this factual dispute to the Commission.

The additional cases Ashwater Burns relies on to support its argument about irrebuttable presumptions are distinguishable.[111] In *Cowen v. Wal-Mart* the medical uncertainty involved whether physical activity could cause a breast implant to deflate.[112] The employer's doctor testified that no one knew whether deflation was "related to physical activity," but nonetheless gave the opinion, based on his experience, that work-related activities were probably not a cause in the deflation of the employee's implant.[113] We agreed with the Board that from this testimony reasonable minds could conclude that work-related physical activities were not a substantial factor in causing the employee's disability.[114] Here, in contrast, the doctors agreed that Huit's scratch *could* provide an entry point for the staph and did not suggest an alternative entry point. Their opinions that the scratch was, on a more probable than not basis, not the substantial cause of the infection were related to doubts about the scratch's existence.

Likewise, in *Bradbury v. Chugach Electric Ass'n* an expert testified there was no way to quantify how much external pressure was needed to rupture an employee's preexisting cyst.[115] But the expert testified that sufficient trauma to do so usually came from blunt trauma, that heavy lifting could not cause a rupture, and that the

---

[111]    We have already discussed two of these cases, *Norcon, Inc. v. Alaska Workers' Compensation Board*, 880 P.2d 1051 (Alaska 1994) and *Safeway, Inc. v. Mackey*, 965 P.2d 22 (Alaska 1998).

[112]    93 P.3d 420, 425-26 (Alaska 2004).

[113]    *Id.*

[114]    *Id.* at 426.

[115]    71 P.3d 901, 907 (Alaska 2003).

employee's work duties would not cause sufficient trauma to rupture the cyst.[116]  We upheld the Board's determination that a reasonable mind could conclude from this evidence that work was not a cause of the cyst's rupture because there was no evidence of trauma and the expert directly refuted the employee's theory that her work duties put enough pressure on the cyst to rupture it.[117]

An irrebuttable presumption is one "that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute."[118]  Huit's case does not involve an irrebuttable presumption, even though Ashwater Burns's task in rebutting the presumption became more difficult after the Board made its finding about the scratch's existence.  In the end Huit's case is no different from cases we have previously considered, such as *Firemen's Fund American Insurance Cos. v. Gomes*[119] or *Excursion Inlet Packing Co. v. Ugale*.[120] In those cases the circumstances of the employees' deaths were unknown, making the employer's task in rebutting the presumption a difficult one.[121]  But the uncertainty in this case, as in *Ugale* or *Gomes*, is resolved through the use of the presumption of compensability.  With different facts Ashwater Burns may have faced a less difficult task, but difficulty in finding and presenting additional evidence is not equivalent to creating an irrebuttable presumption.

---

[116]    *Id.* at 906-08.

[117]    *Id.* at 903, 907-08.

[118]    *See Conclusive Presumption*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[119]    544 P.2d 1013 (Alaska 1976).

[120]    92 P.3d 413 (Alaska 2004) (per curiam).

[121]    *Id.* at 419-20; *Gomes*, 544 P.2d at 1014, 1016.

## VI. CONCLUSION

We REVERSE the Commission's decision that Ashwater Burns rebutted the presumption of compensability and REMAND to the Commission with instructions to reinstate the Board's award.