*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JAY JESPERSEN, | ) | |
| | ) | Supreme Court No. S-18526 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation |
| v. | ) | Appeals Commission No. 21-006 |
| | ) | |
| TRI-CITY AIR and ALASKA | ) | O P I N I O N |
| INSURANCE GUARANTY | ) | |
| ASSOCIATION, | ) | No. 7698 – May 3, 2024 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Richard L. Harren and H. Lee, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellant. Vicki A. Paddock, Meshke Paddock & Budzinski, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

PATE, Justice.

## I.      INTRODUCTION

A pilot injured in an airplane crash in 1985 asked the Alaska Workers' Compensation Board to award him medical benefits for a 2016 spinal surgery and subsequent treatment as well as for diabetes treatment ancillary to his spinal treatment.

At the final hearing the Board excluded the testimony of the pilot's biomechanics expert because his witness list did not conform to Board regulations. Based on the evidence presented, the Board concluded the 1985 injury was not a substantial factor in the pilot's spinal problems and denied his claim.

The Alaska Workers' Compensation Appeals Commission affirmed the Board's decision, concluding that substantial evidence in the record supported the Board's decision and that the Board had not abused its discretion in its procedural rulings. The pilot appeals, arguing that the Commission's conclusions about substantial evidence and abuse of discretion were erroneous. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jay Jespersen was employed by Tri-City Air when the small plane he was piloting crashed near Quinhagak in November 1985. Jespersen sustained a number of injuries in the crash, including several rib fractures and a vertebral compression fracture at L5.[1] Jespersen underwent treatment in Bethel at the U.S. Public Health Service hospital for a short time, recovered on his own at a friend's house in Bethel, and then returned to his home in Minnesota. In Minnesota he first received treatment from a medical doctor but later changed to chiropractic care because he did not feel he was improving under the doctor's care. Jespersen saw Dr. C. M. Carney, D.C., as well as his son, Dr. Michael Carney, D.C. In June 1987 Dr. Michael Carney diagnosed Jespersen with "early degenerative disc disease of L-5, S-1." Jespersen recovered sufficiently to work as a pilot in Minnesota beginning in June 1987.

---

[1]    Intervertebral discs are identified by the numbers of the vertebrae above and below the disc. L5 is the last of the lumbar vertebrae; as discussed immediately below, S1 is the first sacral vertebra.

Jespersen subsequently returned to Alaska, working for Sourdough Outfitters; he and his wife bought Brooks Range Aviation in 1994. They owned and operated the business for many years, with Jespersen working as a pilot as well as a mechanic. Jespersen and his wife spent about seven months per year in Alaska, two to three months in Arizona, and the balance of time in transit or in Minnesota.

The administrative record contains no medical records from June 1987 to August 2007, even though medical records generated later indicate that Jespersen received substantial medical care during this 20-year period. In August 2007 Jespersen went to an emergency room in Fairbanks because of a cough and weight loss. He reported that he had been taking a steroid for osteoarthritis and fibromyalgia.[2] No medical records show when Jespersen was diagnosed with osteoarthritis and fibromyalgia, which body parts were affected by the osteoarthritis, or what prompted the fibromyalgia diagnosis. During this hospital visit Jespersen was diagnosed with diabetes.[3]

In early September 2014 Jespersen returned to the emergency room in Fairbanks after he had an episode in which he lost feeling in both legs for about 30 minutes. According to hospital records, he reported that during the previous week he had felt "weakness" in both lower legs, but that day he "progressively suddenly felt both of his legs giving out" as he was walking in his yard. He fell to the ground but gradually regained sensation in both legs and was taken to the emergency room. Jespersen underwent multiple tests, but the emergency room doctors were unable to identify a cause of his loss of feeling. Jespersen was discharged because he reported

---

[2]  Fibromyalgia is "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." *Fibromyalgia*, STEDMAN'S MEDICAL DICTIONARY (Westlaw database updated Nov. 2014).

[3]  Jespersen was also diagnosed with other conditions that are not relevant to this appeal.

being back to his baseline; he was told to follow up for further testing. Imaging studies of the lumbar spine at the time showed "[n]o evidence of lower thoracic or lumbar cord compressing lesion" but did show a disc protrusion at L5-S1 "causing mild to moderate bilateral foraminal narrowing." A study of his thoracic spine showed "small disc protrusions."

Jespersen sought medical care in Arizona for neck and back pain in February 2016. He told the provider his neck and back pain began with the airplane crash. Imaging studies showed a "broad-based disc bulge and superimposed central disc protrusion" at L5-S1, as well as foraminal stenosis.[4] The Arizona medical records report a diagnosis of degenerative disc disease; the doctor opined that Jespersen's pain in "the neck and back [was] due to a comb[ination] of cervical spondylosis, thoracic and cervical degeneration"[5] and that Jespersen had "lumbar degeneration that [was] causing [left extremity] paresthesia." He was treated with epidural steroid injections in his cervical spine and at L5-S1. He also had medial branch blocks and radiofrequency ablation at several levels of the lumbar spine, including L5, for "lumbar spondylosis."

In June 2016 Jespersen sought care in Alaska for an "[e]xacerbation of low back pain"; he was "unable to put any weight on his left lower extremity due to weakness." A chart note from this time indicates Jespersen "had back issues for over 32 years after he was involved in an airplane crash." Imaging showed a "[m]oderate disc bulge" at L5-S1, "eccentric to the left." The radiology report stated, "Multiple

---

[4] Foraminal stenosis involves a narrowing of an opening in a bone or other structure. *See Foramen*, STEDMAN'S MEDICAL DICTIONARY (Westlaw database updated Nov. 2014); *Stenosis*, *id*.

[5] Spondylosis is stiffening of the vertebra. *Spondylosis*, STEDMAN'S MEDICAL DICTIONARY (Westlaw database updated Nov. 2014) ("Ankylosis of the vertebra . . . ."); *Ankylosis*, *id*. ("Stiffening or fixation of a joint as the result of a disease process . . . .").

levels of lumbar spine degenerative change are seen, which are worst at the L5-S1 level."

Jespersen received care from Dr. Paul Jensen, who recommended "an L5-S1 complete laminectomy with central decompression and diskectomy."[6] The surgery was performed in July 2016, and a few days later Jespersen reported a return of feeling in part of his foot.

Jespersen recovered well from the surgery, but the following year he had a recurrent disc problem at L5-S1. Dr. Jensen recommended a microdiskectomy in May 2017, but Jespersen wanted to try steroid injections first so as not to take time off during the summer. In July Jespersen again consulted with Dr. Jensen's office, reporting that the pain was worse and limited his activities; he was given medication. Jespersen later obtained an opinion from Dr. Jensen for use in this litigation that identified the 1985 airplane crash as a substantial factor in causing the need for the 2016 surgery and for post-surgery care.

The medical records dated after 2017 in the administrative record are relatively scant, but those records demonstrate that Jespersen had continuing problems with his diabetes as well as neck and back pain. A 2019 MRI taken in Fairbanks indicated a right disc protrusion that "abut[ted] both S1 nerve roots." Jespersen saw a chiropractor in Arizona, and it appears the chiropractor referred him to a surgeon for his neck complaints, as well as some vision problems.

In late 2020 and early 2021, Jespersen was in Minnesota for an extended period, apparently because of the COVID-19 pandemic. While there he sought care at the Mayo Clinic for multiple concerns, including low back pain and radicular symptoms as well as diabetes. At a January 2021 neurosurgery consult a physician suggested the

---

[6]     A laminectomy is a surgical procedure that removes the lamina (the back part of the vertebra). *Laminectomy*, STEDMAN'S MEDICAL DICTIONARY (Westlaw database updated Nov. 2014).

possibility of another decompression at L5-S1 or possibly a fusion surgery. A surgeon told Jespersen his diabetes was problematic and he needed to control his blood sugar levels; the doctors suggested Jespersen should return in three months, but Jespersen stated he would likely be in Alaska at that time.

## B. Proceedings

Tri-City Air[7] paid compensation following Jespersen's injury in 1985 until June 1987, when Jespersen returned to work. Jespersen filed a claim for additional compensation in October 1987. This claim resulted in a compromise and release agreement that explicitly left open future medical care; the Board approved the settlement in 1988. The claim was dormant until December 2016, when Dr. Jensen's office filed a workers' compensation claim for medical costs because Jespersen's "commercial insurance" had denied a claim for the surgery "due to an open work comp case." Tri-City Air answered and denied the claim. It also filed a controversion notice, citing the lack of medical evidence tying Jespersen's 2016 surgery to the 1985 crash.

Tri-City Air arranged for Jespersen to be seen by Dr. R. David Bauer for an employer's medical evaluation (EME) in March 2017. Dr. Bauer listed three diagnoses related to the 1985 airplane crash and four diagnoses not substantially caused by or aggravated by the crash. Dr. Bauer thought the need for surgery in 2016 was the result of degenerative disc disease; he specifically opined that the L5 fracture was not a substantial factor in causing the disc herniation that prompted the surgery. Dr. Bauer's report noted that Jespersen's fracture was of the "superior endplate" of L5 and "did not result in any damage to the L5-S1 disc." Dr. Bauer cited several studies, including studies about the interaction between spinal fractures and disc degeneration, to support his opinion that the L5 fracture Jespersen suffered was not a substantial factor in the

---

[7] In this opinion, we refer to the employer and Alaska Insurance Guarantee Association collectively as "Tri-City Air."

L5-S1 disc's later degeneration.  After receiving Dr. Bauer's report, Tri-City Air filed another controversion notice.

Jespersen filed a workers' compensation claim of his own in January 2018, seeking disability benefits in addition to medical and transportation costs.  The claim alleged that the "progressive effects of [the] original injury combined with the aging process have limited motion and increased pain to the point employee can no longer work, unless some pain relief is found."  Tri-City Air answered and denied all claims.  It also filed another controversion notice.

In January 2019 Jespersen filed with the Board a copy of responses Dr. Jensen gave to a 2017 letter Jespersen's attorney had written about causation.  (It appears that Dr. Jensen did not send the responses back until 2019.)  Dr. Jensen answered "yes" — with no explanation — to questions about whether the 1985 airplane crash was a substantial factor in the need for the 2016 surgery, follow-up care following this surgery, and "additional medical care which will continue into the foreseeable future."  Shortly thereafter Jespersen sought a Board hearing on his 2018 claim by filing an affidavit of readiness for hearing;[8] Tri-City Air filed an affidavit in opposition. Jespersen filed a request to cross-examine Dr. Bauer, and Tri-City Air filed a request to cross-examine Dr. Jensen.[9]  The Board set a hearing date for Jespersen's claim for May 2019.

Tri-City Air petitioned the Board for a second independent medical evaluation (SIME) with an orthopedic surgeon, citing a causation dispute between Dr.

---

[8]    *See* AS 23.30.110(c) (requiring party to file "an affidavit stating that the party has completed necessary discovery, obtained necessary evidence, and is prepared for the hearing" when requesting Board hearing).

[9]    *See* 8 Alaska Administrative Code (AAC) 45.052(c) (setting out process to request cross-examination of medical report's author).

Jensen and Dr. Bauer.[10] Jespersen opposed the SIME, and the Board set a hearing on the issue for April 2019.

At the April hearing Tri-City Air asked the Board to consider an endocrinology SIME because Jespersen had testified at deposition about the effect his pain had on his blood sugar; Tri-City Air was concerned about the lack of medical evidence related to diabetes. The Board acknowledged Tri-City Air's concern. Jespersen then disavowed an intention of making a claim related to his diabetes. Jespersen's main concern about the SIME was time: Jespersen wanted a hearing quickly because of the unpaid surgery bills' financial impact on him. The Board ordered a panel SIME "including an orthopedic surgeon and an endocrinologist," with a plan to schedule the SIME to minimize the disruption in Jespersen's work.

Scheduling the SIME became problematic; eventually the parties agreed that the endocrinology appointment would not include a physical examination and that the endocrinologist could rely on the orthopedic specialist's physical examination. The Board later held a second hearing about the SIME process during which Tri-City Air objected to Jespersen's witness list because it did not conform to the Board's regulation about witness lists. That regulation requires, in relevant part, "a brief description of the subject matter and substance of the witness's expected testimony."[11]

The orthopedic SIME took place in March 2020. The SIME doctor, Dr. Sidney H. Levine, concluded Jespersen's need for "[t]reatment and evaluation in 2014"

---

[10] The request cites AS 23.30.095(k), which authorizes the Board to require a SIME when there is a difference of opinion between the parties' doctors on certain issues, including causation. The Board's letters to the SIME doctors suggested it ordered the SIME pursuant to AS 23.30.095(k). This provision was added to the Alaska Worker's Compensation Act in 1988. Ch. 79, § 18, SLA 1988. We express no opinion about the applicability of this subsection to cases involving an injury that happened before July 1, 1988, because no one raised this issue. Ch. 79, §§ 18, 48, SLA 1988.

[11] 8 AAC 45.112.

was "unrelated to the initial injury" in 1985. Dr. Levine identified Jespersen's work activities over the years as well as his activities of daily living as alternative causes of the need for treatment of his lumbar spine. He indicated that the cause of Jespersen's diabetes was "undetermined, but most certainly is not related" to the airplane crash. Dr. Levine did not think any additional treatment was needed for the injuries Jespersen sustained in 1985.

Responding to one of Jespersen's questions, Dr. Levine stated that some symptoms Jespersen felt over the years "would be due to the plane accident," but said that "the substantial cause would not relate back to that injury."[12] Dr. Levine agreed with Dr. Bauer's opinion that Jespersen's 1985 compression fracture would not have affected the L5-S1 disc and stated that if the fracture had affected a disc at all, it would have affected the L4-L5 disc. Dr. Levine thought Jespersen had "evidence of peripheral neuropathy, which may be associated with diabetes," but he did not think the neuropathy was caused by the 1985 injury. Dr. Levine's deposition testimony was largely consistent with his report, and he clarified that he did not regard the airplane crash as a substantial factor in Jespersen's disc condition.

The endocrinology SIME took place in September 2020. Dr. Mark Silver, the SIME endocrinologist, said there was "no link of [Jespersen's] diabetes relating to his [1985] injury." He thought that Jespersen's "treatment with [a steroid] for several years prior to his diagnosis of type 2 diabetes mellitus would have been a substantial factor in his development" of that disease. Dr. Silver did not think the diabetes was

---

[12]     Dr. Levine's reference to the "substantial cause" legal standard was anachronistic. The legal standard for compensability was changed in 2005 to "the substantial cause," but that standard applies to injuries that happened on or after the amendment's effective date of November 7, 2005. *See Huit v. Ashwater Burns, Inc.*, 372 P.3d 904, 906-08 (Alaska 2016) (summarizing changes to compensability analysis in 2005). Because Jespersen's injury happened in 1985, the legal standard for causation in this case is "a substantial factor," as the Board and Commission correctly recognized.

disabling. He acknowledged that "chronic pain might aggravate blood sugar control and diabetes," but he said that "the primary cause of [Jespersen's] elevated blood sugars and poor diabetic control relate[d] to improper medical treatment of his diabetes and inadequate use of diabetic medications." He did not think chronic pain itself was a substantial factor in the development of Jespersen's diabetes.

In November 2020 the parties agreed to address Jespersen's claim at a February 2021 Board hearing; they agreed to file witness lists, briefs, and evidence "in accordance with" the Board's regulations, including 8 AAC 45.112.

Dr. Bauer testified for the hearing at a deposition in February 2021. His testimony was consistent with his report and provided a more detailed explanation about why he ruled out the L5 fracture as a possible cause of the L5-S1 disc herniation that prompted the 2016 surgery. Dr. Bauer explained that the 1985 vertebral fracture was located on the upper part of the L5 vertebra, near the L4-L5 disc, while the herniated L5-S1 disc was located below the L5 vertebra. Dr. Bauer's deposition testimony included a diagram illustrating the fracture's location to support his opinion about the cause of the disc herniation.

Both parties filed their witness lists and pre-hearing memoranda 12 days before the hearing. For the second time in the proceedings Jespersen's witness list was deficient; this time it lacked both phone numbers and summaries of testimony for any of the witnesses.[13]

At the hearing's outset Tri-City Air objected to Jespersen's witness list and asked the Board to prohibit Jespersen from presenting any additional witness testimony because of his noncompliance with the Board's regulation. Tri-City Air was particularly concerned because Jespersen listed an unfamiliar witness, Dr. Mariusz

---

[13] *See* 8 AAC 45.112 (requiring witness lists to include each witness's telephone number and "a brief description of the subject matter and substance" of each witness's "expected testimony").

Ziejewski, but included no information about the substance of his planned testimony. Tri-City Air told the Board that, based on internet research, it anticipated that Dr. Ziejewski's testimony would be "complex." Jespersen's attorney revealed that Dr. Ziejewski was a biomechanical engineer. Jespersen planned to call Dr. Ziejewski as an expert in biomechanics to counter Dr. Bauer's opinions.

After hearing argument from both parties, the Board excluded Dr. Ziejewski's testimony for several reasons: Jespersen's witness list did not conform to the Board's regulation, which, under the circumstances, required it to exclude the testimony; Tri-City Air had no notice about the substance of the testimony, such as a written report; and in the Board's view, Dr. Ziejewski was "the kind of witness . . . that th[e] regulation is made for."

The Board overruled Tri-City Air's objection in part, allowing the testimony of some witnesses, including Dr. Michael Carney, D.C., who Jespersen said would testify "in rebuttal to the deposition of Dr. Bauer." The Board reasoned that Dr. Carney had filed medical records in the case so Tri-City Air had some knowledge base on which to cross-examine him.

Dr. Carney testified that after graduation from chiropractic college he had "completed a three-year course in chiropractic orthopedics" and had later been "certified in applied spinal biomechanical engineering." Dr. Carney explained why he had made a diagnosis of early degenerative disc disease at L5-S1 in 1987; he said some of the degeneration then was related to trauma. He thought the L5 fracture from the 1985 crash would continue to stress Jespersen's back even after the bone healed because it would cause vertebral misalignment. Dr. Carney opined that the need for the 2016 surgery was "a direct result of injuries sustained in the airplane crash of 1985." He gave some details about this opinion, including information that the crash happened during a right turn, which would have affected Jespersen's position on impact. He did not think the changes in Jespersen's spine could be explained solely by normal aging.

Jespersen testified that he had been in chronic pain since the injury and that he had taken the steroids for back pain and had found them helpful. He acknowledged that he had continued to work as a bush pilot and mechanic, which involved significant lifting, from shortly after the injury until 2016; he said he treated the pain with over-the-counter medicine during that time. He clarified he was seeking an order that all care for his spine after 2016, including future care, was compensable and that his claim covered his cervical and thoracic spine as well as his lumbar spine. He said he was not asking for benefits related to diabetes, but his attorney "intercede[d]" to say the claim included any diabetes care necessary for Jespersen to get treatment for his spine.

During the hearing Jespersen's attorney received a phone call, which he told the Board was from Dr. Jensen's former office manager. The attorney told the Board he had "reached out to" Dr. Jensen, who was retired, "over the past week or so" in an attempt to get his testimony, but the former office manager had just called to say that Dr. Jensen "wouldn't be able to do anything to help [Jespersen]." The parties agreed to file written closing arguments about ten days after the hearing.

During the time the record remained open for written closing arguments, Jespersen petitioned the Board in writing to reconsider its decision to exclude Dr. Ziejewski's testimony; he notified the Board that he had taken the deposition of Dr. Ziejewski following the hearing and asked the Board to supplement the record with it.

The Board issued a lengthy decision that denied Jespersen's claim for medical benefits. The Board did not analyze all three steps in the presumption analysis used in pre-2005 workers' compensation cases[14] after finding that Jespersen "agreed"

---

[14]    Before 2005, in order to attach the presumption that a claim was compensable, the employee needed to produce some evidence to show a link between his injury and his requested benefit. *See Huit*, 372 P.3d at 906-07 (summarizing three-step presumption analysis used in workers' compensation cases before 2005 statutory

in his briefing that "Dr. Bauer's EME report rebutted the statutory presumption of compensability." The Board reasoned that in light of this concession, it only needed to perform the third-step analysis, weigh the evidence, and determine compensability. The Board recognized that the "substantial factor" legal standard applied to this claim, meaning that to prevail, Jespersen had to prove by a preponderance of the evidence that "his 1985 injury remain[ed] a substantial factor in his need for medical treatment for his spine and for precursor diabetes treatment beginning in 2016."

After providing a detailed factual summary, the Board assigned weight to the evidence. The Board discounted Jespersen's testimony about his chronic pain because of the lack of medical records supporting his assertion that he suffered chronic and unrelenting pain from the time he returned to work in 1987 until he finally sought care for his back pain in 2016. The Board noted the absence of any medical records from June 1987 to August 2007 in the administrative record and pointed out discrepancies between Jespersen's testimony and the available medical records. The Board concluded that the absence of orthopedic complaints in the medical records and the inconsistency between the records and Jespersen's testimony at the hearing undercut his credibility. The Board considered Jespersen's testimony about his activities as a bush pilot and decided that those work activities would be expected to cause aches and pains in any person who engaged in them. With respect to Jespersen's reports of pain, the Board gave greater weight to his medical records and contemporaneous reports than to his testimony.

---

amendments). If the employee did so, the employer had to rebut the presumption with substantial evidence that either eliminated the injury as a cause or provided an alternative causation explanation that excluded the work injury as a cause. *Id.* If the employer rebutted the presumption, the Board moved to the third stage, where the employee had the burden of proving by a preponderance of the evidence that the work injury was a substantial factor in his need for medical care. *Id.* at 907. The Board weighed the evidence only at the third stage. *Id.*

The Board reviewed Dr. Carney's testimony and identified concerns it had with his opinion, including his reliance on Jespersen's later reports of chronic pain during the period between 1987 and 2019 in which Dr. Carney had not seen Jespersen as a patient. The Board determined that Dr. Carney's opinions were inconsistent with other medical records and stated the imaging records more closely corresponded to Dr. Levine's opinion about them than to Dr. Carney's. It gave Dr. Carney's opinions less weight than Dr. Levine's with regard to Jespersen's degenerative disc disease.

The Board gave Dr. Bauer's opinions "considerable weight." The Board was persuaded by Dr. Bauer's deposition testimony and reproduced in its decision the diagram showing the location of the L5 fracture in relation to the L5-S1 disc that Dr. Bauer had used to illustrate his testimony. The Board thought Dr. Bauer's opinion was consistent with the opinions of the multiple doctors who had over the years diagnosed Jespersen with degenerative disc disease.

The Board gave Dr. Levine's opinions, which were consistent with Dr. Bauer's, "considerable credibility and weight" for some of the same reasons it credited Dr. Bauer's opinions. In the Board's view, even though Dr. Levine's "initial responses" about causation were "confused" because Tri-City Air used the incorrect legal standard in its questions to him, his deposition testimony clarified that his opinions were based on the correct legal standard.

Based on the weight the Board gave to Dr. Bauer's and Dr. Levine's opinions, it decided Jespersen had not met his burden of proof, concluding that the 1985 injury "was neither a factual cause nor a legal cause" of the medical care he received for his spine beginning in 2016. It denied Jespersen's claim for diabetes-related treatment because he had "not prevailed on his primary claim."

The Board's written decision also concluded that its oral rulings refusing to allow Dr. Ziejewski to testify and refusing to continue the case to cure the lack of notice to Tri-City Air about Dr. Ziejewski were correct. The Board pointed out that Tri-City Air had objected to an earlier witness list Jespersen filed because of his

noncompliance with the same regulation, which meant Jespersen's attorney had notice that Tri-City Air might object to another nonconforming witness list. The Board also concluded Jespersen's attorney had enough information that he could have complied with the regulation; the attorney told the Board that he knew before the witness lists were due that Dr. Ziejewski would be testifying.

Jespersen appealed to the Commission. He questioned Dr. Bauer's conclusions by arguing they were not logical and were inconsistent with the articles Dr. Bauer cited; he contended that Dr. Carney's causation explanations were the better ones. Jespersen asked the Commission to reverse the Board's exclusion of Dr. Ziejewski's testimony, alleging that Tri-City Air "hoodwinked the [B]oard in a surprise move at hearing . . . based upon the alleged failure to disclose the nature and manner of [Dr. Ziejewski's] testimony." He argued Tri-City Air in fact had notice about Dr. Ziejewski's testimony because in his pre-hearing brief, filed at the same time as the witness list, he had disclosed that he would "present evidence from a biomechanical engineer which will debunk the overreaching testimony of the independent orthopedic examiners." He then argued that the exclusion of Dr. Ziejewski as a witness "took away the ability of [the employee] to show that Dr. Bauer never did rebut the presumption of compensability," adding that if Dr. Bauer's testimony "did indeed rebut the presumption, then Dr. Ziejewski would have fairly, competently and appropriately assisted and/or enabled Mr. Jespersen in meeting his burden of persuasion."

The Commission did not revisit the presumption analysis, observing that because Jespersen had conceded that Dr. Bauer's testimony rebutted the presumption, the Board did not need to explain all steps in the analysis. After summarizing the evidence and explaining that the Commission is bound by the Board's credibility findings and the weight the Board gives to the evidence, the Commission decided that substantial evidence supported the Board's decision about the compensability of medical care for Jespersen's spine.

The Commission concluded that the Board did not abuse its discretion when the Board applied its own regulation to exclude Dr. Ziejewski's testimony because (1) there was no question of the regulation's validity; (2) Jespersen's witness list did not comply with regulatory requirements; (3) Tri-City had previously objected on the same grounds to another of Jespersen's witness lists, so Jespersen had some notice in addition to the regulation itself about the need to comply with the regulation; and (4) Jespersen did not argue that the regulation was "onerous or burdensome." The Commission characterized Jespersen's decision not to arrange Dr. Ziejewski's testimony earlier as a "litigation strategy" that "did not work."

Jespersen argued to the Commission that the Board erred by not allowing him "time to find and to subpoena" Dr. Jensen, adding that his "testimony and the Board's access to that testimony would also have satisfied the obligations of the Board" to investigate the claim. The Commission analyzed this argument as an appeal of the Board's denial of a request for a continuance. The Commission affirmed the Board's denial of a continuance because "[a] party's negligence does not constitute good cause for requesting a continuance."

Jespersen appeals.

## III. STANDARD OF REVIEW

"In an appeal from the Commission, we review the Commission's decision and not the Board's."[15] We independently review the Commission's conclusions about whether substantial evidence supported the Board's decision by independently reviewing the record and the Board's factual findings.[16] We review the Commission's conclusions about the Board's exercise of discretion by "independently assess[ing]" the Board's discretionary rulings and applying "the appropriate standard

---

[15] *Mitchell v. United Parcel Serv.*, 498 P.3d 1029, 1039 (Alaska 2021) (citing *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017)).

[16] *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

of review."[17] The Board's application of its regulations to the facts of a case is reviewed for abuse of discretion.[18] "We will find an abuse of discretion when the decision on review is 'arbitrary, capricious, or manifestly unreasonable.' "[19] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

## IV.  DISCUSSION

### A.  Jespersen Waived The Argument That Tri-City Air Did Not Rebut The Presumption Of Compensability.

Jespersen argues on appeal that Tri-City Air did not rebut the presumption of compensability regarding medical treatment for his ongoing back pain.  Tri-City Air responds that Jespersen waived this argument by failing to raise it before the Board or the Commission.

We agree with Tri-City Air.  In fact, Jespersen affirmatively waived this argument when he stated in his written closing argument that "Dr. Bauer's report provided the carrier with substantial evidence to overcome the presumption of compensability."[21]  We therefore do not reach the issue of whether Tri-City Air rebutted the presumption of compensability.

---

**17**     *Id.*

**18**     *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007) (quoting *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998)).

**19**     *Mitchell*, 498 P.3d at 1039 (quoting *Alaska State Comm'n for Hum. Rts. v. United Physical Therapy*, 484 P.3d 599, 605 (Alaska 2021)).

**20**     *Id.* (quoting *Vue v. Walmart Assocs., Inc.*, 475 P.3d 270, 279 (Alaska 2020)).

**21**     Even if Jespersen had not waived this argument, it would fail.  As we explain below, Dr. Bauer's and Dr. Levine's opinions were substantial evidence supporting the Board's ultimate conclusion that Jespersen's need for surgery was not work-related.  These opinions, when considered in isolation, necessarily rebutted the presumption that the plane crash was a substantial factor in Jespersen's need for

**B.** **The Commission Correctly Concluded That Substantial Evidence In The Record Supported The Board's Decision.**

Jespersen argues that the Commission erred by affirming the Board's decision because substantial evidence did not support it. As Tri-City Air points out, much of his argument is based on evidence to which the Board gave little or no weight. Tri-City Air contends the Commission correctly concluded that substantial evidence supported the Board's decision because the Board gave more weight to Dr. Bauer's and Dr. Levine's opinions, which it found more consistent with the imaging studies in the record, than to Dr. Carney's.

The Commission is bound by the Board's decisions about the weight of the evidence[22] and must apply the substantial evidence standard of review to the Board's findings of fact.[23] We review the Commission's conclusion that substantial evidence supports the decision by independently reviewing the record and the Board's findings to determine whether those findings are indeed supported by substantial evidence.[24] When using the substantial evidence standard of review, "[w]e neither reweigh the evidence nor choose between competing factual inferences"; "our

---

treatment. *See Cowen v. Wal-Mart*, 93 P.3d 420, 426 (Alaska 2004) (explaining same evidence may both rebut presumption of compensability and show by preponderance of evidence that injury was not work-related); *Huit v. Ashwater Burns, Inc.*, 372 P.3d 904, 906-07 (Alaska 2016) (explaining pre-2005 analysis for whether employer rebutted presumption of compensability, requiring employer to produce "substantial evidence" that, viewed in isolation and without assigning it weight, "either (1) provided an alternative explanation excluding work-related factors as a substantial cause of the disability, or (2) 'directly eliminated any reasonable possibility that employment was a factor in causing the disability' " (quoting *Tolbert v. Alascom, Inc.*, 973 P.2d 603, 611 (Alaska 1999), *superseded by statute*, ch. 10, § 9, FSSLA 2005)).

[22] *Patterson v. Matanuska-Susitna Borough Sch. Dist.*, 523 P.3d 945, 955 (Alaska 2022).

[23] AS 23.30.128(b).

[24] *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009).

determination is limited only to whether such evidence exists."[25] "We have held that 'if the Board is faced with two or more conflicting medical opinions — each of which constitutes substantial evidence — and elects to rely upon one opinion rather than the other, we will affirm the Board's decision.' "[26] A choice between conflicting medical opinions is precisely what the Board faced here. The Board had the conflicting expert opinions of Dr. Carney on one side and Dr. Bauer and Dr. Levine on the other; it chose to rely on Dr. Bauer's and Dr. Levine's medical opinions.

Dr. Bauer provided an opinion that excluded work-related factors as a substantial cause of Jespersen's ongoing back pain. Dr. Bauer identified degenerative disc disease, "a progressive disease of life," as an alternative cause of Jespersen's pain, and Dr. Bauer specifically stated that the degenerative disc disease was "neither caused by nor aggravated by" the 1985 airplane crash. The Board decided Dr. Bauer's opinion was entitled to more weight than Jespersen's evidence. Moreover, the Board credited Dr. Levine's testimony, which was consistent with Dr. Bauer's and further contributed to the substantial evidence supporting the Board's decision. The Commission thus correctly concluded that substantial evidence supported the Board's decision.

## C. Jespersen's Claim For Diabetes Care Was Properly Denied.

Jespersen appears to make two arguments in his opening brief about medical care for his diabetes. He argues that the administrative decision denying compensability for his diabetes care "is wrong as a matter of law, and is clearly erroneous as a factual finding." While Jespersen's argument is not entirely clear, he seems to be asserting that his diabetes care was compensable independent of his primary claim for spinal surgery and treatment because his steroid prescription was for back pain and that medication was a cause of his diabetes. He also contends that his diabetes

---

[25]     *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 767 (Alaska 2000).

[26]     *Id.* at 767-68 (quoting *Yahara v. Constr. & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993)).

care was compensable "for a second reason":  he "cannot get treatment for his spine until he brings his diabetes under control."   Tri-City Air responds that Jespersen "waived his argument that Tri-City did not rebut the presumption of compensability for his diabetes" and thus the only issue that needs to be resolved is whether he proved the claim by a preponderance of the evidence.

The Board found that Jespersen was "not seeking any medical benefits related to diabetes directly" but "said he needs diabetes treatment before his spine can be addressed and such treatment is included in his claim against" Tri-City Air.  This finding is supported by multiple representations made on Jespersen's behalf.  For example, at the final hearing, on February 18, 2021, the Board chair asked Jespersen himself, "And just to be clear, you're not asking for any benefits, medical benefits, related to diabetes, is that correct?"  Jespersen said, "That's correct, yes," but his attorney "intercede[d]" and said, "Mr. Jespersen isn't taking the position that his diabetes came from the plane crash even though there's evidence to suggest that.  But right now his diabetes needs to be treated in order to treat his back."  This position appears to have been the same one articulated at the SIME hearing in 2019.

The claim for diabetes care that Jespersen presented to the Board was dependent on the compensability of his spinal surgery and treatment.  We have affirmed the Board's rejection of Jespersen's medical claim for his spinal care, thus his claim for diabetes care as a necessary condition for compensable medical care for his back was also properly rejected.  To the extent Jespersen is now arguing that his diabetes care is compensable independent of his claim for spinal surgery and treatment, he has waived review of that issue because he did not present such a claim to the Board.[27]

---

[27]     *See Wagner v. Stuckagain Heights*, 926 P.2d 456, 459 (Alaska 1996) (holding that employee waived argument that she was entitled to permanent partial disability benefits because she failed to raise issue before Board or in her initial administrative appeal).

The Commission did not err in affirming the Board's denial of Jespersen's claim for diabetes care.

**D. The Commission Correctly Concluded That The Board Did Not Abuse Its Discretion By Excluding Dr. Ziejewski's Testimony.**

Jespersen argues that the Board's decision to exclude Dr. Ziejewski's testimony was an unnecessarily harsh sanction in light of Jespersen's view of the importance of Dr. Ziejewski's testimony and the alternative steps the Board could have taken to allow the testimony while also permitting Tri-City Air the opportunity to meaningfully cross-examine Dr. Ziejewski. Jespersen suggests that the exclusion of Dr. Ziejewski's testimony deprived him of due process. Tri-City Air argues that the Board's regulation required the Board to exclude the testimony, so the Board did not err by following its regulation.

The Board's regulation on the filing of witness lists requires disclosure of certain information, including "the witness's address and phone number, and a brief description of the subject matter and substance of the witness's expected testimony."[28] The regulation also provides in pertinent part, "If a party directed at a prehearing to file a witness list . . . files a witness list that is not in accordance with this section, the [B]oard will exclude the party's witnesses from testifying at the hearing . . . ."[29] The only exceptions allow the admission of the testimony of a party or "deposition testimony completed, though not necessarily transcribed, before the time for filing a witness list."[30]

Jespersen was directed at a prehearing to file a witness list in accordance with Board regulations. He filed his witness list for the final hearing in February 2021, indicating that witnesses would testify "by Zoom or by telephone if located outside

---

[28] 8 AAC 45.112.

[29] *Id.*

[30] *Id.*

Anchorage, AK." But Jespersen's witness list did not include phone numbers for any of the witnesses, nor did it include "a brief description of the subject matter and substance of the witness's expected testimony," as the regulation requires.[31]

The regulation sets out the penalty for failing to comply with its requirements: with two exceptions, the Board "*will exclude* the party's witnesses from testifying at the hearing."[32] However, despite the deficiencies in Jespersen's witness list, the Board allowed some of Jespersen's other witnesses to testify, including Dr. Carney. The Board thus did not completely prevent Jespersen from offering expert testimony to support his claim.

The Board did not abuse its discretion by excluding Dr. Ziejewski's testimony. First, as the Board noted, Dr. Ziejewski had confirmed that he would be able to testify as an expert in Jespersen's case the day *before* the witness lists were due, so Jespersen had adequate time to comply with the regulation by summarizing the purpose of Dr. Ziejewski's testimony. Additionally, Tri-City Air made the same objection about another of Jespersen's witness lists at an earlier hearing, which should have alerted him to both the regulation's requirements (which he should have known anyway) and the likelihood that Tri-City Air would make objections about nonconforming filings. Moreover, as the Board pointed out, Jespersen knew that biomechanics was an issue before the Board at the hearing because Dr. Bauer's 2017 report relied on biomechanical studies. Copies of the articles Dr. Bauer mentioned were filed with the Board in 2019, and Jespersen's attorney told the Board he was aware in 2017 that Dr. Bauer relied on principles of biomechanics in his opinion.

Finally, Jespersen's attorney indicated when he filed the affidavit of readiness for hearing in January 2019 that he had "obtained necessary evidence" and

---

[31]     *Id.*

[32]     *Id.* (emphasis added).

was *then* "fully prepared for a hearing."[33] At the 2021 hearing a Board panel member asked Jespersen's attorney when he "first became aware that Dr. Bauer intended to rely on principles of biomechanics to explain Mr. Jespersen's condition"; in response the attorney acknowledged that Dr. Bauer's 2017 report discussed biomechanics, so he was first aware of the issue in 2017. In light of this answer the Board was not required to credit the attorney's suggestion that he was unaware of the potential need for an expert in biomechanics until he took Dr. Bauer's deposition in 2021.

Nothing in the record persuades us that the Board abused its discretion by excluding Dr. Ziejewski's testimony. To hold otherwise would be unfair to Tri-City Air. Jespersen's failure to comply with the Board's regulation left Tri-City Air without notice of Dr. Ziejewski's expert testimony, without which it would not have been able to adequately prepare for cross-examination at the hearing.

Nor did the Board deprive Jespersen of due process by excluding the testimony. Jespersen had ample notice of the substantive and procedural issues at the hearing, and he had an opportunity to be heard on them.[34] Jespersen had an obligation to marshal evidence in support of his claim and to do so in a timely manner. Jespersen's attorney recognized as much when he declared by affidavit that he had completed the necessary discovery, had obtained the necessary evidence, and was prepared for the hearing.[35] Under the circumstance of this case, Jespersen's inability to call the expert witness of his choice appears to have been the result of a failure on the part of his

---

[33] *See* AS 23.30.110(c) (setting out requirements for affidavit requesting Board hearing).

[34] *See Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192-93 (Alaska 1980) ("The crux of due process is opportunity to be heard and the right to adequately represent one's interests. Adequate notice is the common vehicle by which these rights are guaranteed." (citations omitted)).

[35] *See* AS 23.30.110(c).

attorney.  The Board did not deprive Jespersen of due process by enforcing its regulation.

### E. The Board Did Not Err By Failing To Secure Dr. Jensen's Testimony On Its Own.

Jespersen contends that the Board erred in failing "to secure" Dr. Jensen's testimony before it closed the record.[36]  Jespersen does not explain this argument, although he suggested to the Commission that the Board should have secured Dr. Jensen's testimony under AS 23.30.135, which gives the Board discretion to investigate claims in the manner it chooses.  Because Jespersen has not provided us any legal reasoning to support the argument that AS 23.30.135 or another source of law required the Board to secure the testimony of a particular witness, that argument is waived.[37]

Even if the argument were not waived, it would have no merit because the Board did not have an obligation to secure Dr. Jensen's testimony.  Dr. Jensen provided yes/no answers to causation questions from Jespersen's attorney.  After Tri-City Air filed a request to cross-examine Dr. Jensen, Jespersen had an obligation to produce him as a witness at either the hearing or at a deposition or risk having the Board exclude his causation opinion.[38]  It is evident Jespersen's attorney knew how to subpoena a witness

---

[36] The Commission interpreted a similar argument Jespersen made to it as an argument that the Board erred in denying a continuance request made at the final hearing.  Jespersen did not present an argument to us about the denial of a continuance, so we do not address it.

[37] *See Patterson v. Matanuska-Susitna Borough Sch. Dist.*, 523 P.3d 945, 958-59 (Alaska 2022) (holding that we would not consider inadequately briefed claims); *Butts v. State, Dep't of Lab. & Workforce Dev.*, 467 P.3d 231, 245 (Alaska 2020) (holding argument is inadequately briefed, despite citation to legal authority, if it is presented without argument or explanation applying authority to facts of case on appeal and "we cannot discern the legal theory [the party] advances").

[38] We have held that the statutory right to cross-examination is absolute and applies to Board proceedings.  *See Com. Union Cos. v. Smallwood*, 550 P.2d 1261, 1264-65 (Alaska 1976).  The Board's regulation at 8 AAC 45.052(c) addresses requests

for a Board hearing because he subpoenaed Dr. Bauer in 2019.  The record reflects that Dr. Jensen declined to assist Jespersen in his claim.  Jespersen provides no explanation for his failure to secure Dr. Jensen's testimony in the nearly two years that elapsed between Tri-City Air's request for cross-examination and the hearing.  His failure to secure Dr. Jensen's testimony did not create an obligation for the Board to do so.

## V.    CONCLUSION

We AFFIRM the Commission's decision.

---

for cross-examination of authors of medical reports.  The Board has interpreted the law as requiring exclusion of a medical report if its author is not made available for cross-examination.  *See Weaver v. ASRC Fed. Holding Co.*, AWCB Dec. No. 17-0124, 2017 WL 5052953, at *28-30 (Oct. 27, 2017) (explaining *Smallwood* objections and exclusion), *aff'd*, 464 P.3d 1242 (Alaska 2020).